IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **LELA LUNDY**<br>    **Plaintiff,**<br><br>**v.**<br><br>**HOUSING AUTHORITY OF**<br>**DEKALB COUNTY**<br>**and**<br>**EUGENE WALKER in his official**<br>**capacity as its Executive Director,**<br>    **Defendants.** | **CIVIL ACTION NO.** |

## COMPLAINT

Plaintiff, Lela Lundy, brings this Complaint seeking injunctive relief and damages for harm sustained as a result of discriminatory practices on the basis of disability. The Housing Authority of DeKalb County illegally discriminated against Ms. Lundy by: (1) refusing to grant a reasonable accommodation for her disabilities and (2) engaging in practices that prevent her and disabled people like her from utilizing Housing Choice Vouchers in DeKalb County, Georgia. In doing so, the Housing Authority has violated Ms. Lundy's right to equal housing access.

## I.  <u>INTRODUCTION AND SUMMARY</u>

1.     Plaintiff Lela Lundy is a low-income resident of DeKalb County and a participant in the Housing Choice Voucher Program (also known as the "Section 8 Program"), which provides continued rental subsidies to very low income persons pursuant to Section 8 of the U.S. Housing Act of 1937 (hereinafter the "Act"), 42 U.S.C. § 1437f.

2.     Ms. Lundy is an 82 year old African American woman with several physical disabilities.

3.     Ms. Lundy's physical disabilities make it exceedingly difficult for her to walk up stairs. She must live in a first-floor unit with a no-step entry.

4.     HUD regulations allow the Housing Authority to establish an exception payment standard up to 120% of the fair market rent to accommodate a person with disabilities. 24 CFR § 982.503.

5.     Ms. Lundy has requested, as a reasonable accommodation, that the Housing Authority of DeKalb County (hereafter "Housing Authority") approve a rent increase of $37 so she may live in the only accessible, first-floor unit she has been able to find in DeKalb County, Georgia. The increase Ms. Lundy is requesting is 103% of the fair market rent. The requested accommodation is necessary for Ms. Lundy to use her voucher.

6.     The Housing Authority has denied Ms. Lundy's request that the Housing Authority pay a prospective landlord the increased rent, thus discriminating against her on the basis of disability.

7.     The Housing Authority has incorrectly and unlawfully conducted a "rent reasonableness" analysis in a manner that denies Ms. Lundy the ability to use her Housing Choice voucher in DeKalb County.

8.     The Housing Authority's flawed methods of finding comparable rents for its rent reasonableness analyses has a disproportionate impact on disabled people because it prevents them from finding accessible housing in DeKalb County, Georgia.

9.     Through their conduct, Defendants have violated the Fair Housing Act of 1968, 42 U.S.C. § 3601, *et seq.*, the Georgia Fair Housing Act, O.C.G.A. § 8-3-200, *et seq.*, Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*

## II. JURISDICTION AND VENUE

8.     Jurisdiction is conferred on this Court by 42 U.S.C. § 3613(a) and 28 U.S.C. §§ 1331 and 1367.

9.    Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

10.    Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because the claims arose in this District, the Defendants do business and/or reside in this District, and the events giving rise to this action occurred in this District.

### III.    PARTIES

11.    Lela Lundy is an African American United States citizen with a disability and a resident of DeKalb County, Georgia.

12.    Defendant Housing Authority of DeKalb County ("Housing Authority" or "HADC") is an entity which administers the federal Housing Choice Voucher Program in DeKalb County, Georgia. The Housing Authority maintains its principal place of business in Decatur, GA and may be served through its Executive Director, Eugene Walker, at 750 Commerce Drive, Decatur, GA 30030.

13.    Defendant Eugene Walker, the Executive Director of the Housing Authority of DeKalb County, Georgia is responsible for Housing Authority's daily operation, including the implementation of its policies.  He is charged with

implementing the Housing Choice Voucher Program in a manner that is consistent with federal and state laws and regulations.

## IV.   FACTUAL BACKGROUND

*Statutory and Regulatory Framework*

14.   The Housing Choice Voucher Program (commonly referred to as Section 8) is a federal program in which the U.S. Department of Housing and Urban Development pays rental subsidies so that approved low income families can afford decent, safe, and sanitary housing. This program is authorized by the Housing Act of 1937, 42 U.S.C. § 1437f(b)(1) and 24 C.F.R. § 982.1.

15.   Under the Housing Choice Voucher Program, families select and rent units that meet program housing quality and rent reasonableness standards.  24 C.F.R. § 982.1(a)(2).

16.   Once a family finds a unit it wants to rent, the owner/manager of the unit submits a Request for Tenancy Approval ("RTA") to the Public Housing Authority ("PHA") that includes the details of the unit and the rent it is requesting. 24 C.F.R. § 982.302

17.   The PHA determines whether to approve the rent an owner is requesting by reviewing its published Payment Standards and by conducting a "rent reasonableness analysis."  24 C.F.R. § 982.305

18. The PHA's Payment Standards are based on HUD's listed Fair Market Rent for that particular zip code, and fall within the range of 90% to 110% of the Fair Market Rent. 24 C.F.R. § 982.503.

19. The rent reasonableness analysis is based on comparable units in the area. 24 C.F.R. § 982.507.

20. If the PHA approves the RTA and the unit passes inspection, the PHA contracts with an owner to make rent subsidy payments on behalf of the participant. 24 C.F.R. § 982.1(b)(2).

21. If a PHA rejects the RTA, the participant must continue searching for an appropriate unit before her voucher expires.

*Ms. Lundy's Need to Move*

22. Ms. Lundy has lived at her current residence for the past twelve years. Ms. Lundy lived with her disabled grandson until he moved out in September 2018.

23. Ms. Lundy's grandson had to move out of her home because her physical health has deteriorated and she is no longer able to care for him as she used to do. Her grandson had to move to a personal care home in DeKalb County that can meet his needs.

24. When Ms. Lundy's grandson moved, she was no longer approved to live in their three-bedroom house with her voucher. She was also unable to afford her portion of the rent at their three-bedroom house.

25. Ms. Lundy's only income is $759 in social security.

26. The Housing Authority required Ms. Lundy to submit a 60-day Notice to Vacate form for her current residence before Ms. Lundy could obtain her new voucher and an RTA packet.

27. Ms. Lundy submitted the Notice to Vacate form to the Housing Authority, with an effective date of October 31, 2018.

28. Ms. Lundy had her voucher briefing—where she received her new voucher—on September 14, 2018. Ms. Lundy's voucher expires on January 12, 2019.

29. Under the Housing Choice voucher program, Ms. Lundy's portion of rent is supposed to be no higher than 40% of her monthly income.

30. Ms. Lundy's current rent is $548 per month, or 72% of her income.

*Ms. Lundy's First Reasonable Accommodation Request*

31. Ms. Wells first submitted a reasonable accommodation request on Ms. Lundy's behalf on August 28, 2018.

32. The request explained Ms. Lundy's significant disabilities and need for accessible housing.  In the request, Ms. Wells asked that Ms. Lundy have 120 days to find a new home and move.

33. The Housing Authority did not respond to the request, but issued a voucher with 120 days of search time. It did not give her more time to stay at her current house.

*Ms. Lundy's Housing Search*

34. Ms. Lundy's case manager, Laura Wells, has been helping her search for a new place to live and manage the transition of her grandson moving out of their home.

35. Ms. Wells is the Program Director at Innovative Solutions for Disadvantage and Disability, a nonprofit organization.

36. In July 2018, Ms. Wells started searching for an apartment for Ms. Lundy. Since that time, Ms. Wells has reviewed at least 50 units and has visited at least 10 units in DeKalb County for Ms. Lundy.

37. For many months, Ms. Wells was unable to find a suitable unit for Ms. Lundy because many had waiting lists, did not accept vouchers, or were not accessible for Ms. Lundy.

38.  In early October 2018, Ms. Wells found a first-floor unit at Kenridge Apartment Complex that had a no-step entry. Ms. Wells submitted the RTA to Kenridge on Ms. Lundy's behalf.

39.  Kenridge completed the RTA and submitted it to the Housing Authority for approval.  Kenridge requested monthly rent of $825.

40.  The Housing Authority rejected the RTA because the rent was $65 over the Housing Authority's payment standard for that zip code.

*Ms. Lundy's Second Reasonable Accommodation Request*

41.  On or around October 16, 2018, Ms. Wells learned from an employee at Kenridge that the RTA was rejected because the rent was too high.

42.  Ms. Wells submitted a second reasonable accommodation request on Ms. Lundy's behalf on October 17, 2018.  The request asked for an increase in the payment standard to 110% because Ms. Lundy was unable to find another accessible unit that would accept her voucher. This request is within the increase allowed by HUD regulations to accommodate an individual's disabilities.

43.  On or around October 22, 2018, the Housing Authority granted the reasonable accommodation request. A Housing Authority employee told Ms.

Wells that Kenridge would have to submit the RTA again, and the complex did so.

44. On or around October 25, 2018, the Housing Authority again rejected the accessible unit at Kenridge, on the basis that it failed a rent reasonableness analysis.

45. The Housing Authority's rent reasonableness analysis indicated that the most it would pay for Ms. Lundy's requested unit was $788, which was $37 less than the complex's requested rent.

46. The Housing Authority's rent reasonableness analysis is flawed in many respects. First, it utilizes old data in a rapidly changing rental market— comparable number one and comparable number two are almost a year old. Second, it uses data that Ms. Wells has found to be inaccurate—comparable number three does not rent one-bedroom apartments for less than $890. Third, it does not take into account amenities, such as a dishwasher and washer/dryer hookups, that Ms. Lundy's unit contains. Finally, it does not give any monetary value to the accessibility of Ms. Lundy's unit.

47. As of the filing of this complaint, the unit at Kenridge was not rented, but was also not being held for Ms. Lundy.

*Injury to Ms. Lundy*

48. The Housing Authority has agreed to extend Ms. Lundy's lease to November 30, 2018, but continuing to pay 72% of her income in rent is causing a severe financial burden on Ms. Lundy.

49. Ms. Lundy has been unable to find any other accessible unit to use her voucher in DeKalb County. If she is unable to find a suitable unit, she risks becoming homeless.

50. As a result of the Housing Authority's actions, Ms. Lundy has experienced stress, uncertainty, and emotional distress.

## V.    CLAIMS FOR RELIEF

### COUNT ONE: Violation of Fair Housing Act of 1968, 42 U.S.C. § 3601, *et seq.—Reasonable Accommodation*

48. Plaintiff realleges and incorporates the facts and allegations contained in all preceding paragraphs, as if set forth in their entirety.

49. Lela Lundy is a member of a protected class on the basis of her disabilities.

50. The Fair Housing Act makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of

(A) that buyer or renter;

11

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that buyer or renter."

§ 3604(f)(1).

51.	The Fair Housing Act makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of:

(A) that person;

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

§ 3604(f)(2).

52.	Discrimination in violation of the Fair Housing Act includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B).

53.  Defendants engaged in discrimination by refusing to make reasonable accommodations to the policies when those accommodations were necessary to afford Ms. Lundy equal access to subsidized housing.

54.  Defendants' actions violated the Fair Housing Act and constitute actionable discrimination on the basis of disability.

55.  Plaintiff is an aggrieved individual as defined by Section 3602(i) by virtue of having been denied a reasonable accommodation.

56.  Defendants engaged in a facially-neutral practice of conducting a rent reasonableness analysis in a manner that makes it nearly impossible for individuals with disabilities to use their vouchers for accessible housing in DeKalb County.  The practice has a predictable and actual harmful disparate impact on individuals with disabilities, including Plaintiff.

57.  As a proximate result of such discriminatory housing practices, Plaintiff has suffered economic loss, mental anguish, and deprivation of her rights.

58.  Defendants' actions were intentional, wanton, malicious, and taken in reckless disregard for Plaintiffs' civil rights.

59.  As a result of these violations of the Fair Housing Act, Defendants are liable to Plaintiffs for:

A. Compensatory damages in an amount to be determined at trial;

B. Injunctive relief;

C. Cost and disbursements; and

D. Attorney's fees.

### COUNT TWO: Violation of Georgia Fair Housing Act, O.C.G.A. § 8-3-200, *et seq.*

60. Plaintiff realleges and incorporates the facts and allegations contained in all preceding paragraphs, as if set forth in their entirety.

61. Ms. Lundy is a member of a protected class under O.C.G.A. § 8-3-200 *et seq.* because she is a person with a disability.

62. The Georgia Fair Housing Act makes it unlawful to discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any renter because of a disability of that renter, a person intending to reside with that renter, or anyone associated with that renter. O.C.G.A. § 8-3-202(a)(6).

63. The Georgia Fair Housing Act makes it unlawful to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provisions of services or facilities in connection with a dwelling, because of disability. O.C.G.A. § 8-3-202(a)(7)(A).

64. The Georgia Fair Housing Act makes it unlawful to refuse to provide a reasonable accommodation to a person with a disability. O.C.G.A. § 8-3-202(a)(7)(B)(ii).

65. Defendants' actions violated the Georgia Fair Housing Act and constitute actionable discrimination on the basis of disability.

66. Plaintiff is an aggrieved person as defined by the Georgia Fair Housing Act by virtue of having been subject to Defendants' discriminatory behavior, including failing to provide a reasonable accommodation.

67. As a proximate result of such discriminatory practices, Plaintiff has suffered economic loss, mental anguish, and humiliation.

68. Defendants' actions were intentional, wanton, malicious, and taken in reckless disregard of Plaintiff's rights.

69. As a result of these violations of the Georgia Fair Housing Act, Defendants are liable to Plaintiff for:

   A. Compensatory damages in an amount to be determined at trial;

   B. Injunctive relief;

   C. Cost and disbursements; and

   D. Attorney's fees.

15

## COUNT THREE: Violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

70. Plaintiff realleges and incorporates the facts and allegations contained in all preceding paragraphs, as if set forth in their entirety.

71. Lela Lundy is a qualified individual with a disability, as defined by Title II of the ADA, 42 U.S.C. § 12102(1) and 28 C.F.R. § 35.104.

72. Defendant Housing Authority of DeKalb County is a public entity within the meaning of the ADA, 42 U.S.C. § 12131(1)(A), (B) and 28 C.F.R. § 35.104.

73. Under the ADA, "a public entity shall make reasonable accommodations in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

74. The ADA's implementing regulations prohibit the Housing Authority from discriminating against individuals with disabilities through contractual, licensing, or other arrangements. 24 C.F.R. § 8.4(b)(1)(v); 28 C.F.R. § 35.130(b)(1).

75. Ms. Lundy sent her reasonable accommodation request to Defendants.

76. Defendants denied the request by failing to grant it within a reasonable time.

77. Defendants' denial of the request is a violation of the ADA.

78. Defendants used "criteria or methods of administration" that have subjected Lela Lundy to discrimination. *See* 28 C.F.R. § 35.130(b)(3). Their methods "have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of [the Housing Authority's] program with respect to individuals with disabilities." *See id.*

79. As a result of these violations of the Americans with Disabilities Act, Defendants are liable to Plaintiff for:

A. Compensatory damages in an amount to be determined at trial;

B. Injunctive relief;

C. Cost and disbursements; and

D. Attorney's fees.

## COUNT FOUR: Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.*

80. Plaintiff realleges and incorporates the facts and allegations contained in all preceding paragraphs, as if set forth in their entirety.

81. Defendants are recipients of federal financial assistance, as defined by Section 504 of the Rehabilitation Act of 1973 and implementing regulations. 45 C.F.R. § 84.3(f), (h), (k); 7 C.F.R. § 15b.3(f), (g).

17

82.   Section 504 prohibits Defendants from excluding Lela Lundy from participation in, denying her the benefits of, or subjecting her to discrimination under its housing program "solely by reason of her disability." 29 U.S.C. § 794(a).

83.   Ms. Lundy requested a reasonable accommodation of Defendants' rules based on her disabilities.

84.   Defendants' refusal to accommodate Ms. Lundy violates Section 504.

85.   As a result of these violations of Section 504 of the Rehabilitation Act, Defendants are liable to Plaintiff for:

   A. Compensatory damages in an amount to be determined at trial;

   B. Injunctive relief;

   C. Cost and disbursements; and

   D. Attorney's fees.

## **PRAYER FOR RELIEF**

   WHEREFORE Plaintiff asks that the Court:

a)      Issue a Temporary Restraining Order requiring Defendants to grant Plaintiff's reasonable accommodation request and approve a rent increase of $37;

b)        Grant preliminary and permanent injunctive relief ordering

Defendants to grant Plaintiff's reasonable accommodation request and cease

discriminating on the basis of her disabilities;

c)        Grant declaratory relief that the Defendants' failure to provide a

reasonable accommodation violates the federal and state laws cited above;

d)        Order that Defendants cease discriminating against disabled

individuals;

e)        Award compensatory damages for Plaintiffs' economic loss,

humiliation, embarrassment, and emotional distress caused by Defendants'

actions;

f)        Award reasonable attorneys' fees, expenses, and costs of

litigation; and

g)        Award such other and further relief as this Court deems

just and proper.

        Respectfully submitted this 8th day of November, 2018.

/s/Lindsey M. Siegel
Lindsey M. Siegel
Georgia Bar No. 730072
Margaret A. Burgess
Georgia Bar No. 167433
Attorneys for Plaintiff

19

Atlanta Legal Aid Society, Inc.
246 Sycamore Street, Suite 120
Decatur, GA  30030
Ph: (770) 817-7522
Fax: (404) 377-2349
lmsiegel@atlantalegalaid.org
maburgess@atlantalegalaid.org

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as approved by the Court in L.R. 5.1.B.

/s/Lindsey M. Siegel
Lindsey M. Siegel
Georgia Bar No. 730072
Attorney for Plaintiff

Atlanta Legal Aid Society, Inc.
246 Sycamore Street
Suite 120
Decatur, GA  30030
Ph: (770) 817-7522
Fax: (404) 377-2349
lmsiegel@atlantalegalaid.org

20